1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9  | NELSON SALISBURY, PHILLIP ASPHY,

10 | KARL STEINBERG, TESHA GAMINO,
   | LEROY DAVIS, STUART BERGMAN,

11 | JORDAN LEVENTHAL, KATHRYN
   | TRAINOR, CYNTHIA REESE, CHAD

12 | FORESTER, MICHAEL MATHENGE,
   | PATRICIA BAILEY, AND DALIT COHEN,

13 | on behalf of themselves and all others similarly
   | situated,

14

15 | Plaintiffs,

16 | vs.

17 | COSTCO WHOLESALE CORPORATION,

18 | Defendant.

Case No.: _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   JURISDICTION AND VENUE ................................................................................. 4

III.  PARTIES ......................................................................................................................... 5

    A.    Plaintiffs ............................................................................................................... 5

        1.    Washington Plaintiffs ........................................................................... 5

            a.    Nelson Salisbury .................................................................... 5

            b.    Phillip Asphy ......................................................................... 5

        2.    California Plaintiffs ............................................................................... 5

            a.    Karl Steinberg ........................................................................ 5

            b.    Tesha Gamino ........................................................................ 6

            c.    LeRoy Davis ........................................................................... 6

        3.    Connecticut Plaintiff ............................................................................ 6

            a.    Stuart Bergman ...................................................................... 6

        4.    Florida Plaintiff .................................................................................... 6

            a.    Jordan Leventhal .................................................................. 6

        5.    Massachusetts Plaintiffs ...................................................................... 7

            a.    Kathryn Trainor .................................................................... 7

            b.    Cynthia Reese ........................................................................ 7

        6.    Michigan Plaintiff ................................................................................ 7

            a.    Chad Forester ......................................................................... 7

         7.    New Jersey Plaintiff ............................................................................. 8

            a.    Michael Mathenge ............................................................... 8

         8.    New Mexico Plaintiff ........................................................................... 8

            a.    Patricia Bailey ...................................................................... 8

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

9. New York Plaintiff.................................................................8

    a. Dalit Cohen ...............................................................8

B. Defendant.....................................................................................8

    a. Costco Wholesale Corporation ...................................8

IV. COMMON FACTUAL ALLEGATIONS ...............................................9

A. U.S. and Mexican law strictly regulate the definition and labeling of tequila. ................................................................................9

B. Tequila's popularity soars as consumers embrace premium, "100% de Agave" labels. ...................................................................12

C. Costco misrepresents its Kirkland Signature tequilas as "100% de Agave" to command premium prices. ...........................................13

D. Scientific testing exposes the misleading nature of Costco's "100% de Agave" claims. .................................................................14

E. Numerous news reports detail widespread tequila adulteration allegations. ....................................................................................16

V. TOLLING ................................................................................................18

VI. CLASS ACTION ALLEGATIONS .....................................................19

VII. CAUSES OF ACTION .......................................................................22

A. RICO Claims.............................................................................22

FIRST CAUSE OF ACTION Violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(c)-(d) (On behalf of the Nationwide Class)........................................................................................................22

    1. The Adulterated Tequila Enterprise........................................23

    2. The Predicate Acts .................................................................25

B. Nationwide Class Claims..........................................................30

SECOND CAUSE OF ACTION VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.* (On Behalf of the Nationwide Class)................................30

C. Claims brought on behalf of the California Class....................32



THIRD CAUSE OF ACTION VIOLATIONS OF CALIFORNIA'S
    CONSUMERS LEGAL REMEDIES ACT CAL. CIV. CODE § 1750, *ET*
    *SEQ.* (On Behalf of the California Class)..............................................................32

FOURTH CAUSE OF ACTION VIOLATIONS OF CALIFORNIA'S FALSE
    ADVERTISING LAW CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*
    (On Behalf of the California Class) ......................................................................34

FIFTH CAUSE OF ACTION VIOLATIONS OF CALIFORNIA'S UNFAIR
    COMPETITION LAW CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*
    (On Behalf of the California Class) ......................................................................36

    D.      Claims brought on behalf of the Connecticut Class.................................39

SIXTH CAUSE OF ACTION VIOLATION OF THE CONNECTICUT UNFAIR
    TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*) ......................39

    E.      Claims brought on behalf of the Florida Class. .....................................40

SEVENTH CAUSE OF ACTION VIOLATION OF THE FLORIDA'S UNFAIR
    & DECEPTIVE TRADE PRACTICES ACT  (FLA. STAT. § 501.201, *ET*
    *SEQ.*).................................................................................................................40

    F.      Claims brought on behalf of the Massachusetts Class...........................42

EIGHTH CAUSE OF ACTION FRAUD BY CONCEALMENT (Based on
    Massachusetts Law)............................................................................................42

    G.      Claims brought on behalf of the Michigan Class....................................42

NINTH CAUSE OF ACTION VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (Mich. Comp. Laws § 445.903, *et seq.*)...........................42

TENTH CAUSE OF ACTION FRAUDULENT CONCEALMENT (Based On
    Michigan Law)...................................................................................................44

    H.      Claims brought on behalf of the New Jersey Class. ...............................44

ELEVENTH CAUSE OF ACTION VIOLATION OF NEW JERSEY
    CONSUMER FRAUD ACT (N.J. Stat. Ann. § 56:8-1, *et seq.,*)............................44

    I.      Claims brought on behalf of the New Mexico Class. .............................45

TWELFTH CAUSE OF ACTION VIOLATION OF THE NEW MEXICO
    UNFAIR TRADE PRACTICES ACT (N.M. Stat. Ann. §§ 57-12-1,
    *et seq.*).............................................................................................................45

    J.      Claims brought on behalf of the New York Class. .................................47



THIRTEENTH CAUSE OF ACTION VIOLATION OF NEW YORK
      GENERAL BUSINESS LAW §§ 349-350 (N.Y. Gen. Bus. Law §§ 349-
      350) ........................................................................................47

PRAYER FOR RELIEF ........................................................................47

DEMAND FOR JURY TRIAL ...............................................................48

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

## I.    INTRODUCTION

1.    This case exposes a high-stakes deception at the heart of the growing and increasingly popular premium tequila market. Despite labeling and advertising Kirkland Signature brand tequila as "100% de Agave," Defendant Costco Wholesale Corporation ("Costco") sells tequila that contains cheaper, non-agave alcohol, misleading consumers across the country.

2.    Seeking to capitalize on consumer demand for authentic, high-quality tequila, Costco labels every bottle of Kirkland Signature brand Blanco, Reposado, Añejo, Añejo Cristalino, and Extra Añejo tequila (collectively "Kirkland Tequila Products") as "100% de Agave."



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX





3. Costco also represents on the face of its bottles that the Kirkland Brand Tequila Products are made "using 100% Blue Agave." For example, the label for Kirkland Brand Reposado tequila states: "This very special Reposado tequila is a blend of tequila rested in American & French oak using 100% Blue Agave. Salud!"

4. These designations tell consumers that Kirkland Tequila Products are made solely from the Blue Weber agave plant, with no other sugars or non-agave sources used in the fermentation process.

5. But scientific testing using established and accepted testing methodologies, including nuclear magnetic resonance (NMR) and isotope testing, reveals the significant presence of non-agave sugars in Kirkland Tequila Products. These findings contradict Costco's "100% de Agave" or "100% Blue Agave," representations and confirm its tequilas are adulterated.

6. By falsely branding Kirkland Tequila Products as "100% de Agave," or "100% Blue Agave," Costco misled consumers, distorted the premium tequila market, and profited from a deception that violates the core principles of consumer protection law.

7. Tequilas that are not 100% agave are commonly referred to as "mixto" and labeled as "tequila" minus the "100% agave" claim.[1] These types of tequilas may have many other undisclosed ingredients so "you don't really know what is in it.[2]

8. Consumers pay a premium price for spirits made from 100% Blue Weber agave because it is a crop that takes longer to grow and is more difficult to harvest and produce than other spirits such as vodka and gin or mixto tequila.[3]

9. Plaintiffs paid a premium price for Kirkland Brand Tequila Products, but they received neither a premium product nor 100% Blue Weber agave tequila.

10. If Plaintiffs and the proposed Class Members ("Class Members") had known the truth of the ingredients in Kirkland's Tequila Products they would not have bought Kirkland's Tequila Product or would have paid less for the product. As a result, Plaintiffs bring claims on their own behalf and on behalf of other consumers of Kirkland's Tequila Products.

11. This lawsuit seeks to hold Costco accountable and recover financial losses sustained by consumers who were misled by its false and misleading advertising.

12. Plaintiffs, on behalf of a proposed class, assert claims under the Racketeering Influenced and Corrupt Organization Act ("RICO"), a nationwide class under the Washington

---

[1] https://www.agavalestequila.com/ (last visited Nov. 13, 2025).

[2] https://inspirotequila.com/tequila-101-mixto-tequila-vs-100-agave-tequila/ (last visited Nov. 13, 2025).

[3] https://suavecitotequila.com/resources/blog/gold-and-silver-tequila-difference/ (last visited Nov. 13, 2025).



Consumer Protection Act, and various state law classes based upon the residence of the named plaintiffs.

## II.    JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises from violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO), This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.    This Court may also exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because they are so related to the RICO claim (within the Court's original jurisdiction) that they form part of the same case or controversy under Article III of the United States Constitution. This case does not present novel or complex issues of state law that predominate over claims for which this Court has original jurisdiction, and there are no compelling reasons for declining supplemental jurisdiction over those of Plaintiffs' claims that do not arise under RICO.

15.    This Court has personal jurisdiction over Costco because Costco has: (1) transacted substantial business in the United States, including in this District; (2) transacted business with members of the Class throughout the United States, including in this District; (3) had substantial contacts with the United States, including in this District; and (4) committed substantial acts in furtherance of their unlawful scheme in the United States, including in this District.

16.    Plaintiffs' injuries arise out of Costco operating, conducting, engaging in, or carrying on business in the fifty states, including Washington.

17.    Costco purposefully directed their activity to the fifty states, including Washington; and controlled the marketing, distribution, and sale of the Kirkland Tequila Products itself.

18.    Pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965, venue is appropriate in this District because Costco is headquartered in this District, a substantial part of the events or omissions which gave rise to the claims occurred in this District, Costco sold Kirkland Tequila

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  Products within this District, and Plaintiffs and Class Members purchased Kirkland Tequila
2  Products in this District.

3                                  **III.     PARTIES**

4  **A.     Plaintiffs**

5       **1.     Washington Plaintiffs**

6            **a.     Nelson Salisbury**

7       19.     Plaintiff Nelson Salisbury is a resident of Burien, Washington. In April 2025,
8  Plaintiff Salisbury purchased a Kirkland Signature brand bottle of Kirkland Blanco tequila at
9  Costco in Tukwila, Washington. When purchasing the Kirkland Tequila Products, Plaintiff
10 Salisbury saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Salisbury
11 understood the truth about the nature of Kirkland's Tequila Products he would not have bought the
12 product or would have paid less for it.

13           **b.     Phillip Asphy**

14      20.     Plaintiff Phillip Asphy is a resident of Seattle, Washington. Between 2023 and
15 2025, Plaintiff Asphy purchased approximately eight bottles of Kirkland Blanco and Añejo tequila
16 at Costco in Seattle, Tukwila, and Federal Way , Washington. When purchasing the Kirkland
17 Tequila Products, Plaintiff Asphy saw and relied on Costco's "100% de Agave" label claims. Had
18 Plaintiff Asphy understood the truth about the nature of Kirkland's Tequila Products he would not
19 have bought the product or would have paid less for it.

20      **2.     California Plaintiffs**

21           **a.     Karl Steinberg**

22      21.     Plaintiff Karl Steinberg is a resident of Laguna Niguel, California. Between 2023
23 and 2025, Plaintiff Steinberg regularly purchased Kirkland Signature bottles of Kirkland Reposado
24 tequila and Kirkland Blanco tequila at Costco in Laguna Niguel, California and Temecula,
25 California. When purchasing the Kirkland Tequila Products, Plaintiff Steinberg saw and relied on
26 Costco's "100% de Agave" label claims. Had Plaintiff Steinberg understood the truth about the
27 nature of Kirkland's Tequila Products he would not have bought the product or would have paid
28 less for it.

### b. Tesha Gamino

22.  Plaintiff Tesha Gamino is a resident of Riverside, California. Between December 2022-December 2024, Plaintiff Gamino purchased approximately four Kirkland Signature bottles of Kirkland Añejo tequila at Costco in Corona, California. When purchasing the Kirkland Tequila Products, Plaintiff Gamino saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Gamino understood the truth about the nature of Kirkland's Tequila Products she would not have bought the product or would have paid less for it.

### c. LeRoy Davis

23.  Plaintiff LeRoy Davis is a resident of Chula Cista, California. Between December 2019 to April 2022, Plaintiff Davis purchased approximately nine bottles of Kirkland Blanco, Reposado, and Añejo tequila at Costco on Broadway and H Street in Chula Vista, California. When purchasing the Kirkland Tequila Products, Plaintiff Davis saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Davis understood the truth about the nature of Kirkland's Tequila Products he would not have bought the product or would have paid less for it.

### 3. Connecticut Plaintiff

### a. Stuart Bergman

24.  2.  Plaintiff Stuart Bergman is a resident of Farmington, Connecticut. Between 2020 and 2025, Plaintiff Bergman purchased approximately eight bottles of Kirkland Reposado and Añejo tequila at Costco in New Britain, Connecticut. When purchasing the Kirkland Tequila Products, Plaintiff Bergman saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Bergman understood the truth about the nature of Kirkland's Tequila Products he would not have bought the product or would have paid less for it.

### 4. Florida Plaintiff

### a. Jordan Leventhal

25.  Plaintiff Jordan Leventhal is a resident of Winter Park, Florida. On June 7, 2025, Plaintiff Leventhal purchased a Kirkland Signature brand bottle of Kirkland Reposado tequila at Costco in Altamonte Springs, Florida. When purchasing the Kirkland Tequila Products, Plaintiff Leventhal saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Leventhal

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  understood the truth about the nature of Kirkland's Tequila Products he would not have bought the

2  product or would have paid less for it.

3      **5.    Massachusetts Plaintiffs**

4          **a.    Kathryn Trainor**

5      26.    Plaintiff Kathryn Trainor is a resident of Taunton, Massachusetts. On August 2,

6  2025, Plaintiff Trainor purchased a Kirkland Signature brand bottle of Kirkland Blanco tequila at

7  Costco in Sharon, Massachusetts. When purchasing the Kirkland Tequila Products, Plaintiff

8  Trainor saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Trainor

9  understood the truth about the nature of Kirkland's Tequila Products she would not have bought

10  the product or would have paid less for it.

11          **b.    Cynthia Reese**

12      27.    Plaintiff Cynthia Reese is a resident of South Boston, Massachusetts. Between 2022

13  and 2025, Plaintiff Reese purchased more than ten bottles of Kirkland Blanco tequila at Costco in

14  Dedham and Danvers, Massachusetts and in Nashua, New Hampshire. When purchasing the

15  Kirkland Tequila Products, Plaintiff Reese saw and relied on Costco's "100% de Agave" label

16  claims. Had Plaintiff Reese understood the truth about the nature of Kirkland's Tequila Products

17  she would not have bought the product or would have paid less for it

18      **6.    Michigan Plaintiff**

19          **a.    Chad Forester**

20      28.    Plaintiff Chad Forester is a resident of Wolverine Lake, Michigan. Between From

21  May 19, 2025 to November 2, 2025, Plaintiff Forester purchased approximately four bottles of

22  Kirkland Blanco tequila at Costco in Commerce Township, Michigan and Bloomfield, Michigan.

23  When purchasing the Kirkland Tequila Products, Plaintiff Forester saw and relied on Costco's

24  "100% de Agave" label claims. Had Plaintiff Forester understood the truth about the nature of

25  Kirkland's Tequila Products he would not have bought the product or would have paid less for it.

26

27

28



**7. New Jersey Plaintiff**

    **a. Michael Mathenge**

29. Plaintiff Michael Mathenge is a resident of Woodbridge, New Jersey. Between January 2023 through November 2025, Plaintiff Mathenge purchased over 75 bottles of Kirkland Blanco tequila at Costco in Edison, New Jersey. When purchasing the Kirkland Tequila Products, Plaintiff Mathenge saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Mathenge understood the truth about the nature of Kirkland's Tequila Products he would not have bought the product or would have paid less for it.

**8. New Mexico Plaintiff**

    **a. Patricia Bailey**

30. Plaintiff Patricia Bailey is a resident of Jemez Springs, New Mexico. Between September 2020 and October 2024, Plaintiff Bailey purchased approximately five bottles of Kirkland Añejo tequila at Costco in Albuquerque, New Mexico. When purchasing the Kirkland Tequila Products, Plaintiff Bailey saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Bailey understood the truth about the nature of Kirkland's Tequila Products she would not have bought the product or would have paid less for it.

**9. New York Plaintiff**

    **a. Dalit Cohen**

31. Plaintiff Dalit Cohen is a resident of Roslyn, New York. Between January 2023-December 2024, Plaintiff Cohen purchased approximately six Kirkland Signature brand bottles of Kirkland Blanco tequila, Reposado tequila and Añejo tequila at Costco in Westbury, New York. When purchasing the Kirkland Tequila Products, Plaintiff Cohen saw and relied on Costco's "100% de Agave" label claims. Had Plaintiff Cohen understood the truth about the nature of Kirkland's Tequila Products she would not have bought the product or would have paid less for it.

**B. Defendant**

    **a. Costco Wholesale Corporation**

32. Costco is a Washington corporation. Costco maintains its principal place of business and headquarters in Issaquah, Washington.



## IV.     COMMON FACTUAL ALLEGATIONS

**A.     U.S. and Mexican law strictly regulate the definition and labeling of tequila.**

33.     In the United States, the Alcohol and Tobacco Tax and Trade Bureau ("TTB") regulates tequila under 27 C.F.R. § 5, which governs the labeling, packaging, and advertising of distilled spirits.

34.     Section 5 defines tequila as "[a]n agave spirit that is a distinctive product of Mexico," and requires that it "be made in Mexico, in compliance with the laws and regulations of Mexico governing the manufacture of Tequila for consumption in that country." 27 C.F.R. § 5.148.

35.     Under Mexican law, tequila is regulated by the Official Mexican Standard NOM-006-SCFI-2012 (the "Tequila NOM"),[4] which sets detailed requirements for the production, labeling, and marketing of tequila.

36.     The Tequila NOM defines two categories of tequila based on the percentage of agave sugar content: (1) "100% agave" and (2) "tequila" or "mixto." To qualify as "100% agave," a tequila's "fermentation may not be enhanced with sugars other than those obtained from the *tequilana weber* blue variety Agave[.]" NOM-006-SCFI-2012 § 5.1.1. These products "must be labeled using one of the following statements: '*100% de agave*,' '*100% puro de agave*,' '*100% agave*,' or '*100% puro agave*,' to which the word 'azul' ["blue"] may be added." *Id.* In contrast, "mixto" tequilas may contain up to 49% non-agave sugars, typically from sugarcane. *Id.* § 5.1.2.

37.     The Tequila NOM classifies tequila based on their characteristics after distillation. For example, tequila may be classified as *Blanco or Plata* ("Silver"), *Joven or Oro* ("Gold"), *Reposado* ("Aged"), *Añejo* ("Extra-aged"), or *Extra Añejo* ("Ultra-aged"). NOM-006-SCFI-2012 § 5.2.1.

38.     To prevent adulteration, the Tequila NOM imposes strict documentation requirements. For example, under Section 6, Authorized Producers of tequila are required to "maintain updated records of at least the following documents: a) Invoices or documents confirming the purchase of the raw materials (Agave and other sugars). b) Documents confirming

---

[4] https://www.crt.org.mx/wp-content/uploads/2024/01/NOM-006-SCFI-2012%20-%20INGLES.pdf (last visited Nov. 13, 2025).



1    raw material input and output. c) Documents confirming the movement of the finished product. d)

2    Inventories of raw materials and finished product, including, specifically, the finished product

3    allocated to aging or bottling." NOM-006-SCFI-2012 § 6.5.2.1.

4         39.    The organization that has taken charge of ensuring compliance with the Tequila

5    NOM is the Consejo Regulador Del Tequila A.C. ("CRT"), or Tequila Regulatory Council.[5] One of

6    the CRT's primary objectives is to "[g]uarantee the authenticity of Tequila to the consumer."[6]

7    According to its website, the CRT "is approved by the General Bureau of Standards of the Ministry

8    of Economy and is accredited by the Mexican Accreditation Entity A.C. to perform its duties as an

9    Inspection Unit, Testing Laboratory and Certification Body[.]"[7]

10        40.    Although CRT presents itself as a regulatory body, it is not a governmental entity.

11   Rather, it is a private non-profit organization composed of members from across the Agave-Tequila

12   production chain, including agave growers, Tequila producers, bottlers, distributors, marketers, and

13   government liaisons.[8] Notably, CRT's Board of Directors and committees are dominated by

14   representatives of well-known tequila producers. In effect, the very companies that CRT purports

15   to regulate are the ones running it.

16        41.    In a lawsuit filed in the Middle District of Florida earlier this year, CRT described

17   itself as "the *only* body accredited and approved under Mexican law to inspect, analyze, and certify

18   compliance with the [Tequila NOM]." *Consejo Regulador Del Tequila A.C. v. Additive Free*

19   *Alliance, Inc.*, Case No. 3:25-cv-00236-WWB-MCR, Dkt. 1, at 1 (M.D. Fla. Mar. 4, 2025)

20   (emphasis in original). "In addition to certifying compliance with the Tequila NOM," the lawsuit

21   explains, the "CRT is also responsible for substantiating fact-based claims on labels of Tequila,

22   such as whether a product is made from 100% Agave or whether the Tequila meets the criteria for

23   being classified as Blanco, Reposado, or Añejo." *Id.* at 1-2.

24

25        [5] Consejo Regulador Del Tequila A.C., *About Us*, CRT.ORG, https://www.crt.org.mx/en/about-
26   us/ (last visited Nov. 13, 2025).

     [6] *Id.*
27
     [7] *Id.*

28   [8] *Id.*

CLASS ACTION COMPLAINT - 10
CASE NO.: _____

1    42.    Among its core responsibilities, the CRT is required to conduct extensive

2  inspections throughout the tequila production chain, beginning with the verification that only Blue

3  Weber agave cultivated within the designated geographic region is used.[9]

4    43.    Under the "Continuous Verification" provisions of the Tequila NOM—which are

5  intended to assess compliance with tequila authenticity requirements—the CRT is further charged

6  with monitoring production practices on-site, including cooking, fermentation, distillation, and

7  aging. *See* NOM-006-SCFI-2012 § 8.5.

8    44.    Aside from the inspection and continuous verification procedures, the CRT is also

9  required to perform laboratory testing of tequila samples to verify key physicochemical parameters

10  such as alcohol content, sugar concentration, and the presence of non-permitted additives.[10]

11  According to the CRT website, its "laboratory plays a crucial role in the tequila certification

12  process by providing accurate and reliable results."[11] These tests are supposed to help ensure that

13  only authentic, unadulterated tequila is certified for domestic and international sale.[12]

14    45.    Notably, the CRT also "owns an incontestable federal registration for the

15  certification mark TEQUILA (Registration No. 5225126)." *Consejo Regulador Del Tequila A.C.*,

16  Case No. 3:25-cv-00236-WWB-MCR, Dkt. 1, at 6. Because CRT holds the U.S. certification mark,

17  only producers certified by the CRT can legally use the term "Tequila" on products sold in the

18  United States. *Id.* at 7. In other words, CRT's control over the U.S. certification mark, combined

19  with its role under Tequila NOM, makes it the sole gatekeeper for what qualifies as "100% Agave"

20  tequila under both Mexican and U.S. law. *See* NOM-006-SCFI-2012 §§ 10, 11. This monopoly

21  gives CRT significant influence over producers, including foreign companies like Costco, by

22  conditioning market access on CRT certification.

---

[9] *Id.*

[10] Consejo Regulador Del Tequila A.C., *Laboratory*, CRT.Org, https://www.crt.org.mx/en/laboratory/ (last visited Nov. 13, 2025).

[11] *Id.*

[12] *Id.*

**B.    Tequila's popularity soars as consumers embrace premium, "100% de Agave" labels.**

46.    Because tequila labeling is strictly regulated, the "100% de Agave" designation signals authenticity, purity, and compliance with both U.S. and Mexican standards. It is more than a technical term—it is a powerful marketing tool that shapes consumer expectations and drives growth in the premium tequila market.

47.    A recent *Forbes* article reports that premium tequila sales have grown 1,270% since 2003, with super-premium brands up 1,500% over the same period.[13] This surge reflects a shift: consumers are no longer chasing volume but instead seeking high-quality, craft spirits rooted in traditional production methods and ingredient purity.[14]

48.    This "premiumization" trend hinges on consumer trust in origin and production claims.[15] Premium tequilas are marketed on their use of 100% Blue Weber agave, traditional harvesting and distillation, and deliberate aging.[16] Consumers see these traits as markers of a superior product and are willing to pay more for bottles bearing those designations.[17] In this context, the "100% de Agave" label functions as shorthand for authenticity and value.[18]

49.    The premiumization trend is especially strong among younger consumers. According to Grand View Research, 54% of consumers age 34 and under prefer premium tequilas, citing taste, production integrity, and brand authenticity as major factors.[19] This demographic—

---

[13] FN: Rachel King, The Tequila Boom: How Premium And Craft Spirits Are Changing The Industry, FORBES.COM (Jan. 5, 2025), https://www.forbes.com/sites/rachelking/2025/01/05/the-tequila-boom-how-premium-and-craft-spirits-are-changing-the-industry/ (last visited Nov. 13, 2025).

[14] *Id.*

[15] King, *supra* note 9; Grand View Research, Tequila Market Size, Share & Trends Analysis Report by Product (Blanco, Reposado, Anejo, Super Premium), By Grade (Value, Premium, High-End Premium, Super Premium), By Distribution Channel, By Region, And Segment Forecasts, 2024-2030), GRANDVIEWRESEARCH.COM, https://www.grandviewresearch.com/industry-analysis/tequila-market-report (last visited Nov. 13, 2025).

[16] Grand View Research, *supra* note 11; Heather Clark, From Agave To Your Glass: Everything You Need To Know About Making, Drinking, And Actually Enjoying Tequila, TASTINGTABLE.COM (Feb. 25, 2025), https://www.tastingtable.com/1792801/how-tequila-is-made-explained/ (last visited Nov. 13, 2025).

[17] Grand View Research, *supra* note 11; Clark, *supra* note 11.

[18] Grand View Research, *supra* note 11.

[19] *Id.*

CLASS ACTION COMPLAINT - 12
CASE NO.: _____



accustomed to researching products before buying them—relies heavily on labels like "100% de Agave" to assess quality.[20]

50.     Tequilas labeled "100% de Agave" often command significantly higher prices than mixto alternatives.[21] This price premium reflects both the increased cost of using only Blue Weber agave and the value consumers place on purity and traditional production methods. Research shows that consumers are not just buying tequila, they are buying what the label represents: authenticity, craftsmanship, and adherence to cultural and regulatory standards.[22]

51.     The "100% de Agave" label has become a cornerstone of brand positioning in the premium and super-premium tequila markets.[23] In an increasingly crowded spirits landscape, producers use this designation to stand apart from mass-produced alternatives and to appeal to consumers seeking high-quality, artisanal products.[24] The label helps justify higher prices, secure shelf space in upscale retailers, and earn consumer trust. Without the credibility of this claim, brands risk losing both prestige and profit.[25]

**C.      Costco misrepresents its Kirkland Signature tequilas as "100% de Agave" to command premium prices.**

52.     Costco has aggressively leveraged the "100% de Agave" claim to justify premium pricing and secure market dominance for Kirkland Tequila Products. The reputation of those products and sales depends on promises of agave purity. But those representations are false.

53.     Every bottle of Kirkland Signature tequila is stamped with "100% de Agave."

54.     Costco knew that the Kirkland Tequila Products were not made from "100% de Agave," and that its labeling and marketing was false, and misleading.

---

[20] *Id.*

[21] *Id.*

[22] King, *supra* note 11; Grand View Research, *supra* note 11.

[23] Grand View Research, *supra* note 11.

[24] *Id.*

[25] *Id.*



1    55.    In a market increasingly defined by premiumization, label integrity is not optional—

2    it is essential. The "100% de Agave" designation is a material representation that consumers rely

3    on to select a product that match their values and expectations.[26]

4    56.    Misusing the "100% de Agave" label is not just a technical violation—it distorts

5    consumer choice and marketplace competition. It allows Costco to unjustly profit from the pricing

6    power, trust, and loyalty typically reserved for authentic products. In a segment where small-batch

7    producers and traditional distillers uphold rigorous standards, misuse of the "100% de Agave" label

8    by mass-market brands dilutes the label's value and harms both consumers and honest competitors.

9    57.    For dominant players like Costco, this is not just deceptive—it is a calculated,

10    strategic misuse of market power.

11    **D.    Scientific testing exposes the misleading nature of Costco's "100% de Agave" claims.**

12    58.    The seriousness of Costco's misconduct cannot be overstated. By falsely labeling

13    mass-produced Kirkland Tequila Products as "100% de Agave," Costco not only deceives

14    consumers—it undermines legitimate producers and distorts the market for authentic tequila.

15    59.    To verify the falsity of Costco's claims, Plaintiffs commissioned laboratory testing

16    of Costco's tequilas using a scientifically validated method: carbon isotope ratio analysis. This

17    technique, which is widely accepted in food chemistry, identifies the plant origin of ethanol in a

18    spirit and detects adulteration.

19    60.    To determine whether tequila labeled as "100% de Agave" derives its alcohol solely

20    from agave sugars, scientists measure the natural carbon fingerprint of the ethanol in the spirit.

21    This fingerprint—known as a stable carbon isotope ratio ($\delta^{13}C$)—can be used to identify the plant

22    source of the sugars used in fermentation.

23    61.    Specifically, researchers analyze the carbon composition at two parts of the ethanol

24    molecule: the methylene group ($CH_2$) and the methyl group ($CH_3$). Ethanol made from Blue Weber

25

26

27

28    [26] King, *supra* note 11; Grand View Research, *supra* note 11.

CLASS ACTION COMPLAINT - 14
CASE No.: _____



**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

agave, a CAM[27] plant, shows a distinct isotope signature compared to cheaper feedstocks like corn or sugarcane, which are $C_4$ plants.

62.    A foundational 2010 study confirmed this distinction.[28] Ethanol made from $C_4$ plants such as corn and sugarcane consistently shows $\delta^{13}C(CH_2)$ values near $-13.5$‰.[29] In contrast, agave-derived ethanol falls within a range of $-7.0$‰ to $-9.0$‰.[30] The $CH_3$ position offers further separation: $C_4$-derived ethanol typically measures around $-12.0$‰, while agave-derived ethanol shows more negative values, between $-15.0$‰ and $-17.0$‰.[31] Ethanol from $C_3$ plants like sugar beets registers even lower, further validating the method's ability to identify ethanol sources.[32]

63.    Building on that foundation, a 2021 peer-reviewed study refined and validated a nuclear magnetic resonance (NMR) technique that measures $\delta^{13}C$ content at both the $CH_2$ and $CH_3$ positions.[33] These results confirmed the same diagnostic patterns: ethanol from pure agave sources consistently fell within the expected $\delta^{13}C$ ranges, while ethanol from $C_4$ plants, like cane and corn, displayed more negative values.[34] The study established precise benchmarks—$CH_2$ values below $-10.0$‰ are likely indicative of non-agave origin.[35]

64.    Together, these studies provide a scientifically validated, peer-reviewed framework for determining whether ethanol in a tequila sample truly comes from agave.

---

[27] CAM species (like Blue Weber agave) are plants that use a water-efficient form of photosynthesis. Unlike most plants, they open their stomata (the pores on their leaves) at night instead of during the day. This allows them to absorb carbon dioxide in cooler, more humid conditions, reducing water loss in the hot sun.

[28] *See* Freddy Thomas, et al., Improved Characterization of the Botanical Origin of Sugar by Carbon-13 SNIF-NMR Applied to Ethanol, 58 J. AGRIC. FOOD CHEM. 11580, 11580-81 (2010).

[29] *Id.* at 11583.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Vincent Portaluri, et al., Authentication of Agave Products through Isotopic Intramolecular $^{13}C$ Content of Ethanol: Optimization and Validation of $^{13}C$ Quantitative NMR Methodology, 1 ACS FOOD SCI. TECHNOL. 1316, 1316-17 (2021).

[34] *Id.* at 1320.

[35] *Id.*



65.     Using that framework, Plaintiffs commissioned laboratory analysis which applied validated carbon isotope testing to two Kirkland Tequila Products labeled "100% de Agave": Kirkland Blanco and Kirkland Reposado. This testing was done using scientific and accepted testing methodologies.

66.     The tested samples yielded the following results:

**Kirkland Blanco**: $\delta^{13}C\_CH2 = -11.8‰$ (Estimated agave-derived ethanol: **60-80%**)

**Kirkland Reposado**: $\delta^{13}C\_CH2 = -12.8‰$ (Estimated agave-derived ethanol: **5-25%**)

67.     None of the tested samples met the threshold for ethanol derived entirely from agave sugars.

68.     These findings directly contradict the prominent "100% de Agave" labels on Kirkland Tequila Products and confirm that Costco's representations are materially false and misleading.

**E.     Numerous news reports detail widespread tequila adulteration allegations.**

69.     Plaintiffs' isotope testing reflects a broader concern within the tequila industry: that adulteration with non-agave alcohol is not only happening, but far more widespread than consumers realize.

70.     In January 2025, the Mexican business publication *Líder Empresarial* reported large-scale protests by thousands of agave growers, who accused major tequila producers of diluting their products with non-agave inputs such as cane alcohol.[36] These allegations were substantiated by the Consejo Mexicano del Agave (CMXDA), a national organization representing agave farmers, which confirmed that adulteration with cane-based spirits is both ongoing and widespread.[37]

---

[36] Maria Hernandez Figueroa, Agaveros exigen «eliminar monopolios» en la Industria Tequilera, Lider Empresarial, LiderEmpresarial.com (Jan. 10, 2025), https://www.liderempresarial.com/agaveros-exigen-eliminar-monopolios-en-la-industria-tequilera/ (last visited Nov. 13, 2025).

[37] *Id.*

CLASS ACTION COMPLAINT - 16
CASE NO.: _____



**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

71.    On January 13, 2025, *Mezcalistas*, a respected industry site, published an article accusing the CRT—the very organization charged with preserving tequila's integrity—of being "corrupt, in league with 'big tequila,' and tacitly supporting monopolistic practices that squeeze out small farmers."[38]

72.    The article claims the CRT has "been turning a profit by allowing some tequila corporations to mix cane or corn alcohol into tequila that's then labeled as 100 percent agave."[39] These "alarming charges" are reportedly backed by eyewitness accounts from agave farmers who "have seen trucks delivering cane alcohol to distilleries, and have gathered enough proof to merit a government investigation."[40]

73.    In a second *Mezcalistas* article, published January 15, 2025, Salvador Ibarra Landeros, the president of the Union Campesino Agavera (which translates roughly as "the rural agave union"), stated: "The tequila industry is regulated by the very same people who own the distilleries. The government has put the power in the hands of the CRT, which is an organization created for the businessmen. The people that work at the CRT respond to the orders of their bosses, the businessmen who appointed them. That's how these crimes happen."[41]

74.    That same article reported that agave farmers had planned to block tanker trucks from entering the Tequila region to prove that cane alcohol was being delivered to distilleries.[42] The tankers "*could be viewed as evidence of foul play*," the article explained, because "'*cold mixing,' or adding cane or corn alcohol to tequila, is illegal under any circumstances*."[43]

---

[38] Felisa Rogers, What are you drinking? Agave farmers allege tequila industry corruption, MEZCALISTAS.COM (Jan. 13, 2025), https://www.mezcalistas.com/tequila-industry-corruption/ (last visited Nov. 13, 2025).

[39] *Id.*

[40] *Id.*

[41] Felisa Rogers, Agave farmers say they will no longer play nice, MEZCALISTAS.COM (Jan. 15, 2025), https://www.mezcalistas.com/breaking-tequila-news/ (last visited Nov. 13, 2025).

[42] *Id.*

[43] *Id.* (emphasis in original).



75.     Protest organizers ultimately "dialed back this action when recently elected Governor Pablo Lemus Navarro (of the Movimiento Ciudadano party) agreed to convene with the [agave farmers], the tequila executives, and the CRT to work on a solution."[44]

76.     The governor, however, failed to attend the promised meeting.[45] When asked for his response, CMXDA spokesperson Remberto Galván Cabrera stated: "The truth is that the tequila industry, the governor of the state, and the CRT are colluding. Yesterday I saw clearly that there isn't a human power on this earth that can get rid of the corruption of this nest of vipers."[46]

## V.    TOLLING

77.     Plaintiffs incorporate and reallege the foregoing allegations by reference.

78.     The statute of limitations applicable to Plaintiffs' claims were tolled by Costco's conduct and by Plaintiffs' and Class Members' delayed discovery of their claims.

79.     As alleged in detail above, throughout the relevant time period, Costco actively concealed and failed to disclose that Kirkland Tequila Products, all of which are marketed as "100% de Agave," are adulterated with non-agave alcohol. This concealment prevented Plaintiffs and Class Members from learning the true composition of the Kirkland Tequila Products.

80.     Costco knew that its misbranded "100% de Agave" Kirkland Tequila Products were adulterated with non-agave alcohol. Nevertheless, it knowingly engaged in, or conspired to engage in, misleading marketing portraying these products as being derived solely from the Blue Weber agave plant and compliant with Mexican legal standards for "100% de Agave" tequila.

81.     Because Costco had superior knowledge about the production and adulteration of Kirkland Tequila Products, it had a duty to disclose the true nature and quality of those products to Plaintiffs and Class Members.

82.     Costco also knew that disclosing that the Kirkland Tequila Products are adulterated with non-agave alcohol would reduce or eliminate sales of Kirkland Tequila Products.

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

83. Had Costco disclosed the truth, Plaintiffs and Class Members would have reviewed those disclosures and would not have purchased the Kirkland Tequila Products, or would have paid less for them and not paid a premium.

84. Costco intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment regarding the Kirkland Tequila Products by actively concealing that the Kirkland Tequila Products are adulterated with non-agave alcohol. Plaintiffs and Class Members justifiably relied on the misrepresentations, omissions, and concealment to their detriment.

85. Given the highly technical nature of carbon isotope testing and the specialized knowledge required to detect adulteration, Plaintiffs did not discover Costco's unlawful conduct until November 2025.

86. At the time of purchase, Plaintiffs and Class Members could not have discovered, through reasonable diligence, that the Kirkland Tequila Products were adulterated and Costco had concealed that fact.

87. Accordingly, all applicable statute of limitations are tolled under the discovery rule as to claims that the Kirkland Tequila Products are adulterated with non-agave alcohol.

## VI.    CLASS ACTION ALLEGATIONS

88. Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves and all others similarly situated as members of the following Classes (collectively "the Classes"):

    a.    **A Nationwide Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in the United States.

    b.    **California Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in California.

    c.    **Connecticut Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in



Connecticut.

d.    **Florida Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in Florida.

e.    **Massachusetts Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in Massachusetts.

f.    **Michigan Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in Michigan.

g.    **New Jersey Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in New Jersey.

h.    **New Mexico Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in New Mexico.

i.    **New York Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in New York.

j.    **Washington Class:** All persons who during the applicable statutes of limitations to the present, purchased Kirkland Tequila Products in Washington.

89.    Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Costco, its subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Costco has a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Costco's counsel.

90.    **Numerosity**: The Class is so numerous that joinder of all Class Members is impracticable. Based on Plaintiffs' investigation, Plaintiffs believe that the Class includes millions of Class Members.

CLASS ACTION COMPLAINT - 20
CASE NO.: _____

91.     **Predominant Common Questions**: Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including but not limited to:

   a.     Whether Costco made specific claims to consumers that its Kirkland Tequila Products are "100% de Agave";

   b.     Whether Costco knew the Kirkland Tequila Products labeled "100% de Agave" were adulterated with non-agave alcohol;

   c.     Whether Costco's conduct violates RICO and consumer protection statutes, and constitutes fraudulent concealment as alleged herein;

   d.     Whether Costco engaged in a pattern or practice of racketeering, as alleged herein;

   e.     Whether Plaintiffs and Class Members overpaid for Kirkland Tequila Products;

   f.     Whether Plaintiffs and Class Members are entitled to equitable relief; and

   g.     Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and, if so, in what amount.

92.     **Typicality**: Plaintiffs' claims are typical of the claims of the Class. The claims of Plaintiffs and Class Members arise from the same conduct by Costco and are based on the same legal theories.

93.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs and Plaintiffs' counsel have no interest that is antagonistic to the interests of the Class, and Costco has no defense unique to any Plaintiff or Class Member. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the resources to do so. Neither Plaintiffs, nor Plaintiffs' counsel, have any interest adverse to the interests of any other Class Member.

94.     **Superiority**: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this

1  controversy and joinder of all members of the class is impracticable. This proposed class action

2  presents fewer management difficulties than individual litigation, and provides the benefits of

3  single adjudication, economies of scale, and comprehensive supervision by a single court. Class

4  treatment will create economies of time, effort, and expense, and promote uniform decision-

5  making. Class-wide damages are essential to compel Costco to comply with state and federal law.

6  Moreover, because the amount of each individual Class Member's claim is small relative to the

7  complexity of the litigation, and because of Costco's financial resources, Class Members are

8  unlikely to pursue legal redress individually for the violations detailed in this complaint. A class

9  action will allow these claims to be heard where they would otherwise go unheard because of the

10 expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of

11 scale, and comprehensive supervision by a single court.

12      95.    **Injunctive Relief**: Plaintiffs also satisfy the requirements for maintaining a class

13 under Rule 23(b)(2). Costco acted on grounds that apply generally to the proposed Class, making

14 final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

15      96.    **Particular Issues**: Plaintiffs also satisfy the requirements for maintaining a class

16 action under Rule 23(c)(4). Plaintiffs' claims are common to all Class Members and are capable of

17 class-wide resolution that will significantly advance the litigation.

## VII.    CAUSES OF ACTION

**A.    RICO Claims.**

### FIRST CAUSE OF ACTION
**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1962(c)-(d)**
**(On behalf of the Nationwide Class)**

97.     Plaintiffs incorporate and reallege the foregoing factual allegations by reference.

98.     Plaintiffs bring this claim for themselves and on behalf of the Nationwide Class against Costco.

99.     Pursuant to 18 U.S.C. § 1962(c): "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign



1  commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

2  affairs through a pattern of racketeering activity or collection of unlawful debt."

3      100.    Plaintiffs are entitled to a civil remedy for any violation of 18 U.S.C. § 1962 for

4  "[a]ny person injured in his business or property by reason of a violation of section 1962 of this

5  chapter." 18 U.S.C. § 1964(c).

6      101.    Costco is liable under 18 U.S.C. § 1962(c) because it conducted or participated in

7  the conduct of the affairs of an "association-in-fact enterprise" through a pattern of racketeering

8  activity. Costco is also liable under 18 U.S.C. § 1962(d) because it conspired to violation 18 U.S.C.

9  § 1962(c).

10      102.    As a direct and proximate result of its fraudulent scheme and common course of

11  conduct described throughout this Complaint, Costco was able to extract hundreds of millions if

12  not billions of dollars from Plaintiffs and Class Members.

13      **1.**    **The Adulterated Tequila Enterprise**

14      103.    At all relevant times, Costco has been a "person" under 18 U.S.C. § 1961(3)

15  because it is capable of holding, and does hold, a "legal or beneficial interest in property."

16      104.    Costco conducted and participated in the conduct of an association-in-fact enterprise

17  as defined in 18 U.S.C. § 1961(4) (hereinafter the "Adulterated Tequila Enterprise"). Members of

18  the Adulterated Tequila Enterprise include Costco, Santa Lucia Corporate Distillery a.k.a. Santa

19  Lucia, S.A. de C.V. ("Santa Lucia"), and other individuals and entities, including unknown third

20  parties, involved in producing, verifying, bottling, labeling, certifying, marketing, advertising, and

21  selling Kirkland Tequila Products.

22      105.    The Adulterated Tequila Enterprise was and continues to be characterized by a

23  common purpose, relationships among the members of the Adulterated Tequila Enterprise, and

24  sufficient longevity to accomplish the common purpose thereof. Costco and each member of the

25  Adulterated Tequila Enterprise conducted and participated in the conduct of the Adulterated

26  Tequila Enterprise through a pattern of racketeering activity.

27      106.    The Adulterated Tequila Enterprise was formed for the common purpose of illegally

28  profiting from the sale of Kirkland Tequila Products that were falsely labeled as "100% de Agave"



1  tequila. The Adulterated Tequila Enterprise fulfilled the common purpose by ensuring that Costco

2  obtained a false certification of Kirkland Tequila Products as "100% de Agave" tequila in order to

3  sell them in the United States at a premium price.

4      107.    At all relevant times, the Adulterated Tequila Enterprise: (a) had an existence

5  separate and distinct from Costco; (b) was separate and distinct from the pattern of racketeering in

6  which Costco engaged; and (c) was an ongoing organization consisting of legal entities.

7      108.    While Costco participated in and is a member of the Adulterated Tequila Enterprise,

8  it has a separate existence that is distinct from the Adulterated Tequila Enterprise, including

9  distinct legal status, different offices and role, bank accounts, officers, directors, employees,

10  individual personhood, reporting requirements, and financial statements.

11      109.    The Adulterated Tequila Enterprise is characterized by ongoing relationships among

12  its members. Most notably, Costco outsources the production of Kirkland Tequila Products to

13  Santa Lucia, which is located in Tesistán, Jalisco, Mexico.

14      110.    Within the Adulterated Tequila Enterprise, there was a common communication

15  network through which Costco and members of the Adulterated Tequila Enterprise shared

16  information on a regular basis. The Adulterated Tequila Enterprise used this communication

17  network for the purpose of furthering its common purpose and conducting its pattern of

18  racketeering activities.

19      111.    Costco and each member of the Adulterated Tequila Enterprise conducted and

20  participated in the conduct of the Adulterated Tequila Enterprise by engaging in a pattern of

21  racketeering activity to further the common purpose of the Adulterated Tequila Enterprise. Costco

22  exercised control over, directed, and participated in the operation and management of the

23  Adulterated Tequila Enterprise by directing its affairs and using members of the Adulterated

24  Tequila Enterprise as instrumentalities to carry out the fraudulent scheme of the Adulterated

25  Tequila Enterprise and further its common goals.

26      112.    In particular, members of the Adulterated Tequila Enterprise produced, bottled, and

27  labeled the Kirkland Tequila Products as "100% de Agave," knowing that the Kirkland Tequila

28  Products were, in fact, adulterated with non-agave alcohols in violation of U.S. and Mexican law.



1    Costco either had access to test results, turned a willful blind eye to the results, or worked with

2    Santa Lucia to ensure that testing results did not reveal that Costco's Kirkland Tequila Products

3    contained non-agave sugars, and to ensure that CRT granted a false certification of the Kirkland

4    Tequila Products as "100% de Agave" tequila. Thus, Costco also marketed and sold the Kirkland

5    Tequila Products with actual or constructive knowledge that the "100% de Agave" claims on every

6    bottle of its tequila were false and misleading because the Kirkland Tequila Products were

7    adulterated with non-agave alcohols.

8        113.    To secure the "100% de Agave" certification, Costco and/or Santa Lucia are

9    required to pay CRT for laboratory analyses, certifications, and compliance audits under the

10    Tequila NOM. CRT authorizes tequila labels—e.g., "100% de Agave"—and issues Tequila NOM

11    and U.S. Department of Transportation registration numbers.

12        114.    Costco and Santa Lucia knew of, supported, and participated in the Adulterated

13    Tequila Enterprise by coordinating their own conduct to further the common purpose of the

14    Adulterated Tequila Enterprise. Moreover, both Costco and Santa Lucia knew that Costco's "100%

15    de Agave" claims were false and misleading representations, yet they stayed silent to further the

16    common purpose of the Adulterated Tequila Enterprise.

17        115.    Each member of the Adulterated Tequila Enterprise shared in the bounty generated

18    by the enterprise—*i.e.*, by sharing the benefit derived from increased sales revenue generated by

19    the scheme to defraud consumers nationwide.

20        116.    The Adulterated Tequila Enterprise engaged in, and its activities affected, interstate

21    and foreign commerce, because it involved commercial activities across state boundaries, such as

22    the marketing, advertisement, and sale or lease of the Kirkland Tequila Products throughout the

23    country, and the receipt of monies from the sale of the same.

24        **2.    The Predicate Acts**

25        117.    The Adulterated Tequila Enterprise's common purpose of illegally profiting from

26    the sale of Kirkland Tequila Products that were falsely labeled as "100% de Agave" tequila was

27    facilitated by a pattern of mail and wire fraud. The Adulterated Tequila Enterprise's scheme

28    constitutes racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c),

CLASS ACTION COMPLAINT - 25
CASE NO.: _____

by using mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) & 1343 (wire fraud).

118.    Specifically, Costco has committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 & 1343). The multiple acts of racketeering activity were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by Costco's regular and knowing use of the facilities, services, distribution channels, and employees of the Adulterated Tequila Enterprise. Costco knowingly and intentionally participated in the scheme to defraud by using mail, telephone, and the internet to transmit mailings and wires in interstate or foreign commerce.

119.    Costco devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Nationwide Class or to obtain money from Plaintiffs and the Nationwide Class using materially false or fraudulent pretenses, representations, promises, or omissions of material facts.

120.    Costco's predicate acts of racketeering, 18 U.S.C. § 1961(1), include but are not limited to:

a.    **Mail Fraud**: Costco violated 18 U.S.C. § 1341 by sending and receiving, and by causing to be sent and/or received, materials via U.S. Mail or commercial interstate carriers for the purpose of executing the unlawful scheme to defraud by producing, verifying, bottling, labeling, certifying, marketing, and selling Kirkland Tequila Products by means of false pretenses, misrepresentations, promises, and omissions.

b.    **Wire Fraud:** Costco violated 18 U.S.C. § 1343 by transmitting and/or receiving, and by causing to be transmitted and/or received, materials by wire to execute the unlawful scheme to defraud by producing, verifying, bottling, labeling, certifying, marketing, and selling Kirkland Tequila Products by means of false pretenses, misrepresentations, promises, and omissions.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

121.    Costco's use of the mails and wires includes, but is not limited to, the transmission, delivery, and shipment of the following by Costco and members of the Adulterated Tequila Enterprise in furtherance of their scheme to defraud:

a.    the Kirkland Tequila Products;

b.    documents and information related to testing of the Kirkland Tequila Products;

c.    false and misleading certifications that the Kirkland Tequila Products are "100% de Agave" tequila;

d.    false and misleading communications to the public;

e.    sales and marketing materials, including advertising, websites, and product labeling, which misrepresented, omitted, and concealed the true nature of the Kirkland Tequila Products;

f.    emails, communications and correspondence to coordinate the affairs of the Adulterated Tequila Enterprise including, but not limited to, communications with CRT and its members; and

g.    emails, communications and correspondence related to all of the foregoing.

122.    The mail and wire transmissions described herein were made in furtherance of Costco's scheme and common course of conduct to deceive consumers and lure them into purchasing the Kirkland Tequila Products, which Costco knew were adulterated with non-agave alcohols and, therefore, did not contain "100% de Agave" alcohol.

123.    Many of the precise dates of the fraudulent uses of the U.S. Mail and interstate wire facilities are hidden from Plaintiffs and Class Members, and cannot be alleged without access to Costco's books and records, and the books and records of members in the Adulterated Tequila Enterprise. However, Plaintiffs have described the types of predicate acts of mail and/or wire fraud that occurred.

124.    Costco has not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), Costco conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1   third-party entities and individuals not named as defendants in this complaint, have participated as

2   co-conspirators with Costco in these offenses and have performed acts in furtherance of the

3   conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for

4   Costco and its unnamed co-conspirators throughout the illegal scheme and common course of

5   conduct.

6       125.    Costco aided and abetted others in violating the above laws, thereby rendering it

7   indictable as a principal in the 18 U.S.C. §§ 1341 & 1343 offenses.

8       126.    To achieve its common goals, Costco actively and intentionally concealed from the

9   general public the unlawfulness of the Kirkland Tequila Products.

10      127.    Costco, Santa Lucia, and each member of the conspiracy, with knowledge and

11   intent, has agreed to the overall objectives of the conspiracy and participated in the common course

12   of conduct to commit acts of fraud and indecency in producing, verifying, bottling, labeling,

13   certifying, marketing, advertising, and selling the Kirkland Tequila Products.

14      128.    Indeed, for the conspiracy to succeed Costco, Santa Lucia, and their co-conspirators

15   had to agree to implement and use similar devices and fraudulent tactics including, but not limited

16   to, complete secrecy about the adulterated Kirkland Tequila Products.

17      129.    Costco knew and intended that Plaintiffs and Class Members would rely on the

18   material misrepresentations and omissions made by it about the Kirkland Tequila Products. Costco

19   knew and intended that consumers would incur damages as a result.

20      130.    Plaintiffs and millions of other consumers relied upon Costco's misrepresentations,

21   omissions, and concealment. Plaintiffs' reliance is made evident by the fact that they purchased the

22   Kirkland Tequila Products that did not comply with the Tequila NOM and which never should

23   have been introduced into the U.S. stream of commerce.

24      131.    As described herein, Costco engaged in a pattern of related and continuous predicate

25   acts. These predicate acts constituted various unlawful activities, each conducted with the common

26   purpose of obtaining significant monies and revenues from Plaintiffs and Class Members based on

27   their misrepresentations, omissions, and concealment, while providing Kirkland Tequila Products

28   worth significantly less than the purchase price paid. The predicate acts also had the same or

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

132.    All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the Adulterated Tequila Enterprise. The racketeering acts committed by the Adulterated Tequila Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on Plaintiffs and Class Members.

133.    The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

134.    The predicate acts all generated significant revenue and profits for Costco at the expense of Plaintiffs and Class Members. The predicate acts were committed or caused to be committed by Costco through its participation in the Adulterated Tequila Enterprise and furtherance of its fraudulent schemes.

135.    By reason of and as a result of the conduct of Costco, and in particular its pattern of racketeering activity, Plaintiffs and Class Members have been injured in multiple ways, including but not limited to:

a.    Plaintiffs overpaid for the Kirkland Tequila Products at the time of purchase. Plaintiffs would not have purchased Kirkland Tequila Products if Costco truthfully disclosed the products were adulterated with non-agave alcohols and, therefore, not "100% de Agave." Alternatively, Plaintiffs would not have paid a premium for the Kirkland Tequila Products if proper disclosures had been made.

b.    Plaintiffs have been wrongfully deprived of their property in that deliberate misrepresentations, omissions, and concealment artificially inflated the price for the Kirkland Tequila Products.

136.    Costco's violations of 18 U.S.C. § 1962(c) & (d) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1    are entitled to bring this action for three times their actual damages, as well as injunctive/equitable

2    relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

3    **B.    Nationwide Class Claims.**

### SECOND CAUSE OF ACTION
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*
### (On Behalf of the Nationwide Class)

137.    Plaintiffs Salisbury and Asphy incorporate and reallege the foregoing factual

allegations by reference.

138.    Plaintiffs Salisbury and Asphy bring this claim on behalf of the Nationwide Class

against Costco under Washington's Consumer Protection Act (the "Washington CPA"), Wash.

Rev. Code Ann. § 19.86.010, *et seq*.

139.    Costco, Plaintiffs, and each member of the Washington Class are "person[s]" under

Wash. Rev. Code Ann. § 19.86.010(1).

140.    At all relevant times, Costco was and is engaged in "trade" or "commerce" under

Wash. Rev. Code Ann. § 19.86.010(2).

141.    The Washington CPA broadly prohibits "[u]nfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §

19.96.010. Costco's conduct was unfair because it (1) offends public policy as it has been

established by statutes, the common law, or otherwise; (2) was immoral, unethical, oppressive, or

unscrupulous; or (3) caused substantial injury to consumers. In short, Costco's conduct has been

deceptive because it has the capacity or tendency to deceive.

142.    Costco knew that the Kirkland Tequila Products were adulterated with non-agave

alcohol and should not have been certified, labeled, and/or marketed as "100% de Agave."

143.    Costco owed a duty to Plaintiffs and Class Members to disclose that the Kirkland

Tequila Products are not "100% de Agave" because it possessed exclusive knowledge that the

Kirkland Tequila Products were adulterated with non-agave alcohol, intentionally concealed the

foregoing from Plaintiffs and Class Members, and made misleading and incomplete representations

regarding the agave sugar content of the Kirkland Tequila Products.

CLASS ACTION COMPLAINT - 30
CASE NO.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1      144.    Costco's conduct proximately caused injuries to Plaintiffs and Class Members.

2      145.    Costco's knowing and intentional misrepresentations and omissions were material

3   in that a reasonable consumer would have considered them important in deciding whether to

4   purchase the Kirkland Tequila Products.

5      146.    Plaintiffs purchased the Kirkland Tequila Products in reliance on Costco's knowing

6   and intentional misrepresentations and omissions. That reliance was reasonable, as they had no

7   way of discerning that Costco's representations were false and misleading, or otherwise learning

8   the true nature of the Kirkland Tequila Products.

9      147.    Absent Costco's misrepresentations and omissions, Plaintiffs and Class Members

10  would not have purchased the Kirkland Tequila Products or would have paid significantly less than

11  they did for them.

12     148.    Had Costco adequately disclosed the truth about the Kirkland Tequila Products

13  through the same advertising mediums it advertised them as "100% de Agave," Plaintiffs would

14  have seen those disclosures.

15     149.    As a result of Costco's unfair and deceptive acts or practices, Plaintiffs and Class

16  Members suffered were injured and suffered ascertainable loss, injury in fact, and/or actual

17  damages in that the adulterated Kirkland Tequila Products are not "100% de Agave," and,

18  therefore, are not worth the premium price Plaintiffs and Class Members paid. These injuries are

19  the direct and natural consequence of Costco's misrepresentations, fraud, deceptive practices, and

20  omissions.

21     150.    Costco's violations present a continuing risk to Plaintiffs as well as to the general

22  public. Costco's unlawful acts and practices complained of herein impact the public interest, in that

23  consumers are paying inflated prices for the Kirkland Tequila Products as a result of Costco's

24  conduct.

25     151.    Costco is liable to Plaintiffs and Class Members for damages in amounts to be

26  proven at trial, including reasonable attorneys' fees, costs, and treble damages up to $25,000, as

27  well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann.

28  § 19.86.090.

CLASS ACTION COMPLAINT - 31
CASE NO.: _____

**C.      Claims brought on behalf of the California Class.**

### THIRD CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### CAL. CIV. CODE § 1750, *ET SEQ.*
### (On Behalf of the California Class)

152.    Plaintiffs incorporate and reallege the foregoing factual allegations by reference.

153.    Plaintiffs Steinberg, Gamino, and Davis bring this claims on behalf of the California Class against Costco under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

154.    The Kirkland Tequila Products are "goods" as defined in Cal. Civ. Code § 1761(a).

155.    Plaintiffs and the other California Class Members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, California Class Members, and Costco are "persons" as defined in Cal. Civ. Code § 1761(c).

156.    The purchase of the Kirkland Tequila Products by Plaintiffs and the California Class Members constitutes "transactions" as defined in Cal. Civ. Code § 1761(e).

157.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

158.    Costco violated Cal. Civ. Code § 1770(a) by, among other things: misrepresenting the source, approval, or certification of the Kirkland Tequila Products; misrepresenting the affiliation, connection, or association with, or certification by, another; representing that the Kirkland Tequila Products have characteristics, ingredients, or quantities which they do not have; representing that the Kirkland Tequila Products are of a particular standard, quality, or grade, when they are of another; advertising the Kirkland Tequila Products with intent not to sell them as advertised; and representing that the Kirkland Tequila Products have been supplied in accordance with a previous representation when they have not. *See* Cal. Civ. Code §§ 1770(a)(2), (a)(3), (a)(5), (a)(7), (a)(9), and (a)(16).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

159.    Costco's unfair and deceptive acts or practices occurred repeatedly in Costco's course of trade or business, were material, and were capable of deceiving a significant portion of the general consuming public.

160.    Costco knew that the Kirkland Tequila Products were adulterated with non-agave alcohol and should not have been certified, labeled, and/or marketed as "100% de Agave."

161.    Costco owed a duty to Plaintiffs and California Class Members to disclose that the Kirkland Tequila Products are not "100% de Agave" because it possessed exclusive knowledge that the Kirkland Tequila Products were adulterated with non-agave alcohol, intentionally concealed the foregoing from Plaintiffs and California Class Members, and made misleading and incomplete representations regarding the agave sugar content of the Kirkland Tequila Products.

162.    In failing to disclose the true nature of the Kirkland Tequila Products, Costco knowingly and intentionally concealed material facts and breached its duty to Plaintiffs and California Class Members. Costco knew or should have known that its conduct would mislead consumers about the true nature of the Kirkland Tequila Products,

163.    Costco's knowing and intentional misrepresentations and omissions were material in that a reasonable consumer would have considered them important in deciding whether to purchase the Kirkland Tequila Products.

164.    Plaintiffs purchased the Kirkland Tequila Products in reliance on Costco's knowing and intentional misrepresentations and omissions. That reliance was reasonable, as they had no way of discerning that Costco's representations were false and misleading, or otherwise learning the true nature of the Kirkland Tequila Products.

165.    Absent Costco's misrepresentations and omissions, Plaintiffs and California Class Members would not have purchased the Kirkland Tequila Products or would have paid significantly less than they did for them.

166.    Had Costco adequately disclosed the truth about the Kirkland Tequila Products through the same advertising mediums it advertised them as "100% de Agave," Plaintiffs would have seen those disclosures.



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

167.   As a result of Costco's unfair and deceptive acts or practices, Plaintiffs and California Class Members suffered actual damages in that the adulterated Kirkland Tequila Products are not "100% de Agave," and, therefore, are not worth the premium price Plaintiffs and California Class Members paid.

168.   Plaintiffs and California Class Members seek an order enjoining Costco's unfair and deceptive acts or practices, equitable relief, and award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other relief available under the CLRA. Plaintiffs and members of the public will suffer irreparable injury without an injunction, as they have an interest in buying Kirkland Tequila Products in the future but have no way of determining whether they are made with "100% de Agave."

169.   On November 13, 2025, Plaintiffs sent a notice letter to Costco in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Costco of its alleged violations of Cal. Civ. Code § 1770(a) and demanding that Costco correct or agree to correct the actions described therein within thirty (30) days of the notice letter. If Costco fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs and California Class Members are entitled under the CLRA.

170.   Plaintiffs plead this claim separately as well as in the alternative to [his/her] claims for damages under Fed. R. Civ. P. 8(a)(3). Additionally, Plaintiffs have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above, absent an injunction. Moreover, Costco's alleged misconduct is ongoing and therefore damages are not certain or prompt, and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE § 17500, *ET SEQ.***
**(On Behalf of the California Class)**

171.   Plaintiffs incorporate and reallege the foregoing factual allegations by reference.



172.    Plaintiffs Steinberg, Gamino, and Davis bring this claim for and on behalf of the California Class against Costco.

173.    California's False Advertising Law ("FAL") makes its "unlawful for any person, firm, corporation or association . . . to make or disseminate or cause to be made or disseminated . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

174.    Costco caused to be made or disseminated throughout California, through marketing, and other publications, untrue and misleading statements that the Kirkland Tequila Products are "100% de Agave." Costco's untrue and misleading statements were likely to deceive a significant portion of the general consuming public.

175.    Costco knew that the Kirkland Tequila Products were adulterated with non-agave alcohol and should not have been certified, labeled, and/or marketed as "100% de Agave."

176.    Costco was under a duty to Plaintiffs and California Class Members to disclose that the Kirkland Tequila Products are "100% de Agave" because it possessed exclusive knowledge that the Kirkland Tequila Products were adulterated with non-agave alcohol, intentionally concealed the foregoing from Plaintiffs and California Class Members, and made misleading and incomplete representations regarding the agave sugar content of the Kirkland Tequila Products.

177.    In failing to disclose the true nature of the Kirkland Tequila Products, Costco knowingly and intentionally concealed material facts and breached its duty to Plaintiffs and California Class Members. Costco knew or should have known that its conduct would mislead consumers about the true nature of the Kirkland Tequila Products.

178.    Costco's knowing and intentional misrepresentations and omissions are material in that a reasonable consumer would have considered them important in deciding whether to purchase the Kirkland Tequila Products at the price offered.

179.    Plaintiffs purchased the Kirkland Tequila Products in reliance on Costco's knowing and intentional misrepresentations and omissions. That reliance was reasonable, as they had no way of discerning that Costco's representations were false and misleading, or otherwise learning the true nature of the Kirkland Tequila Products.

CLASS ACTION COMPLAINT - 35
CASE No.: _____



180.    Absent Costco's misrepresentations and omissions, Plaintiffs and California Class Members would not have purchased the Kirkland Tequila Products or would have paid significantly less than they did for them.

181.    Had Costco adequately disclosed the truth about the Kirkland Tequila Products through the same advertising mediums it advertised them as "100% de Agave," Plaintiffs would have seen those disclosures.

182.    As a direct and proximate result of Costco's misrepresentations and omissions, consumers have been and are being harmed. Plaintiffs and California Class Members have suffered injury and actual out-of-pocket losses as a result of Costco's FAL violations.

183.    Plaintiffs bring this action pursuant to Cal. Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein. Plaintiffs and California Class Members are entitled to: (a) an order requiring Costco to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Costco as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure § 1021.5.

184.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3). Additionally, Plaintiffs have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above, absent an injunction. Moreover, Costco's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(On Behalf of the California Class)**

185.    Plaintiffs incorporate and reallege the foregoing factual allegations by reference.

186.    Plaintiffs Steinberg, Gamino, and Davis bring this claim on behalf of the California Class against Costco.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

187.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

188.    Costco's conduct, as described herein, was and is unfair, deceptive, and unlawful, in violation of the UCL.

189.    Costco knew that the Kirkland Tequila Products were adulterated with non-agave alcohol and, therefore, under applicable Tequila NOM standards, should not have been certified, labeled, and/or marketed as "100% de Agave."

190.    Costco was under a duty to Plaintiffs and California Class Members to disclose that the Kirkland Tequila Products are not "100% de Agave" because it possessed exclusive knowledge that the Kirkland Tequila Products were adulterated with non-agave alcohol, intentionally concealed the foregoing from Plaintiffs and California Class Members, and made misleading and incomplete representations regarding the agave sugar content of the Kirkland Tequila Products.

191.    Costco's conduct was fraudulent in at least the following ways:

      a.    By knowingly and intentionally failing to disclose that the Kirkland Tequila Products were adulterated with non-agave alcohol;

      b.    By knowingly and intentionally misrepresenting that the Kirkland Tequila Products comply with all applicable standards under the Tequila NOM for "100% de Agave" tequila products; and

      c.    By knowingly and intentionally selling Kirkland Tequila Products that are misbranded as "100% de Agave."

192.    Costco's knowing and intentional misrepresentations and omissions alleged herein were intended to cause, and did cause, Plaintiffs and the California Class Members to make their purchases of the Kirkland Tequila Products. Costco knew or should have known that its conduct would mislead consumers about the true nature of the Kirkland Tequila Products.

193.    Plaintiffs purchased the Kirkland Tequila Products in reliance on Costco's knowing and intentional misrepresentations and omissions. That reliance was reasonable, as they had no



1   way of discerning that Costco's representations were false and misleading, or otherwise learning

2   the true nature of the Kirkland Tequila Products.

3         194.    Absent Costco's misrepresentations and omissions, Plaintiffs and California Class

4   Members would not have purchased the Kirkland Tequila Products or would have paid

5   significantly less than they did for them.

6         195.    Had Costco adequately disclosed the truth about the Kirkland Tequila Products

7   through the same marketing mediums it marketed them as "100% de Agave," Plaintiffs would have

8   seen those disclosures.

9         196.    Accordingly, Plaintiffs and California Class Members have suffered ascertainable

10   loss and actual damages as a direct and proximate result of Costco's misrepresentations, their

11   concealment of and failure to disclose material information, and their unlawful and unfair conduct.

12         197.    Additionally, Costco's acts and practices described above are unfair under the UCL

13   because they offend established public policy regarding misleading marketing and the harm caused

14   to consumers greatly outweighs any benefits associated with those practices. Costco's conduct has

15   also impaired competition within the premium tequila market and has prevented Plaintiffs and

16   California Class Members from making fully informed decisions about whether to purchase the

17   Kirkland Tequila Products and/or the price to purchase them.

18         198.    Costco's conduct, as described herein, was and is unlawful in violation of the UCL

19   in that Costco violated the laws alleged above, including California consumer protection laws.

20   Further, Costco's conduct is unlawful under the UCL in that Costco violated California's Sherman

21   Food, Drug, and Cosmetic Law (Cal. Health & Safety Code § 109875, *et seq.*), which prohibits

22   misbranding "food," including alcoholic beverages. *See* Cal. Health & Safety Code § 109935; *id.* §

23   110660.

24         199.    Plaintiffs request that this Court enter such orders or judgments as may be necessary

25   to restore to Plaintiffs and members of the California Class any money it acquired by unfair

26   competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. &

27   Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as may be appropriate.

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

200.    Plaintiffs also seek an injunction enjoining Costco's misconduct alleged herein. Plaintiffs and members of the public will suffer irreparable injury without an injunction, as they have an interest in buying Kirkland Tequila Products in the future but have no way of determining whether they are made with "100% de Agave."

201.    Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3). Additionally, Plaintiffs have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above, absent an injunction. Moreover, Costco's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**D.      Claims brought on behalf of the Connecticut Class.**

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CONNECTICUT UNFAIR**
**TRADE PRACTICES ACT**
**(CONN. GEN. STAT. § 42-110A, *ET SEQ.*)**

202.    Plaintiff Bergman incorporates and realleges the foregoing factual allegations by reference.

203.    Plaintiff Bergman brings this Count on behalf of the Connecticut Class Members.

204.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

205.    Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

206.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

207.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Connecticut Class Members, about the true nature of Kirkland Tequila Products.

208.    Defendant intentionally and knowingly misrepresented material facts about Kirkland Tequila Products with intent to mislead Plaintiff and the Connecticut Class.

209.    Plaintiff and Connecticut Class Members suffered ascertainable loss caused by Defendant's misrepresentations and its failure to disclose material information.

210.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

211.    As a direct and proximate result of Defendant's violations of the Connecticut UTPA, Plaintiff and the Connecticut Class Members have suffered injury-in-fact and/or actual damage.

212.    Plaintiff and Connecticut Class Members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

213.    Plaintiff also seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**E.      Claims brought on behalf of the Florida Class.**

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE FLORIDA'S UNFAIR &**
**DECEPTIVE TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, *ET SEQ.*)**

214.    Plaintiff Leventhal incorporates and realleges the foregoing factual allegations by reference.

215.    Plaintiff brings this Count on behalf of the Florida Class.

216.    The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

217.    Plaintiff and the Florida Class Members are "consumers" within the meaning of the FUDTPA, Fla. Stat. § 501.203(7).

218.    Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

219.    Defendant intentionally and knowingly misrepresented material facts about Kirkland Tequila Products with intent to mislead Plaintiff and the Florida Class.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1       220.    Plaintiff and the Florida Class Members reasonably relied on Costco's material

2  omissions and false misrepresentations. They had no way of knowing that Costco's representations

3  were false and misleading. Plaintiff and the Florida Class Members did not, and could not, unravel

4  Costco's deception on their own.

5       221.    Costco's unfair or deceptive acts or practices were likely to and did in fact deceive

6  reasonable consumers, such as Plaintiff and the Florida Class Members.

7       222.    Costco knew or should have known that its conduct violated the FUDTPA.

8       223.    Costco's unfair and deceptive acts or practices occurred repeatedly in its trade or

9  business, were capable of misleading a substantial portion of the purchasing public.

10      224.    As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff

11  and the Florida Class Members have suffered injury-in-fact and/or actual damage.

12      225.    Defendant intentionally and knowingly misrepresented material facts about

13  Kirkland Tequila Products with intent to mislead Plaintiff and the Florida Class.

14      226.    Plaintiff and Florida Class Members suffered ascertainable loss caused by

15  Defendant's misrepresentations and its concealment of a failure to disclose material information.

16      227.    Defendant's violations present a continuing risk to Plaintiff as well as to the general

17  public. Defendant's unlawful acts and practices complained of herein affect the public interest.

18      228.    As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff

19  and the Florida Class have suffered injury-in-fact and/or actual damage.

20      229.    Plaintiff and Florida Class Members are entitled to recover their actual damages

21  under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

22      230.    Plaintiff also seek an order enjoining Defendant's unfair and/or deceptive acts or

23  practices, punitive damages, and attorneys' fees, and any other just and proper relief available

24  under the FUDTPA.

25

26

27

28


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1    **F.      Claims brought on behalf of the Massachusetts Class.**

2                    **EIGHTH CAUSE OF ACTION**
                    **FRAUD BY CONCEALMENT**
3                   **(Based on Massachusetts Law)**

4             231.   Plaintiffs Trainor and Reese incorporate and reallege the foregoing factual

5    allegations by reference.

6             232.   Plaintiffs Trainor and Reese bring this Count on behalf of themselves and the

7    Massachusetts Class.

8             233.   Costco intentionally concealed and suppressed material facts regarding its Kirkland

9    Tequila Products.

10            234.   Plaintiffs and the Massachusetts Class Members reasonably relied on Costco's

11   material omissions and false misrepresentations. They had no way of knowing that Costco's

12   representations were false and misleading. Plaintiffs and the Massachusetts Class Members did not,

13   and could not, unravel Costco's deception on their own.

14            235.   Costco's unfair or deceptive acts or practices were likely to and did in fact deceive

15   reasonable consumers, such as Plaintiffs and the Massachusetts Class Members.

16            236.   Costco's unfair and deceptive acts or practices occurred repeatedly in its trade or

17   business, were capable of misleading a substantial portion of the purchasing public.

18            237.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the

19   Massachusetts Class Members have suffered injury-in-fact and/or actual damage.

20   **G.      Claims brought on behalf of the Michigan Class.**

21                     **NINTH CAUSE OF ACTION**
     **VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
22                 **(Mich. Comp. Laws § 445.903, *et seq.*)**

23            238.   Plaintiff Forester incorporates and realleges the foregoing factual allegations by

24   reference.

25            239.   This Count is brought by Plaintiff Forester on behalf of himself and the Michigan

26   Class.

27            240.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair,

28   unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,"

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  including "[m]aking false or misleading statements of fact concerning the reasons for, existence of,

2  or amounts of price reductions;" "[f]ailing to reveal a material fact, the omission of which tends to

3  mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;"

4  "charging the consumer a price that is grossly in excess of the price at which similar property or

5  services are sold;" "[m]aking a representation of fact or statement of fact material to the transaction

6  such that a person reasonably believes the represented or suggested state of affairs to be other than

7  it actually is;" or "[f]ailing to reveal facts that are material to the transaction in light of

8  representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

9      241.   Plaintiff and Michigan Class Members are "person[s]" within the meaning of the

10  Mich. Comp. Laws § 445.902(1)(d).

11      242.   Defendant is a "person" engaged in "trade or commerce" within the meaning of the

12  Mich. Comp. Laws § 445.902(1)(d) and (g).

13      243.   Defendant intentionally and knowingly misrepresented material facts about

14  Kirkland Tequila Products with intent to mislead Plaintiff and the Michigan Class.

15      244.   Plaintiff and the Michigan Class Members reasonably relied on Costco's material

16  omissions and false misrepresentations. They had no way of knowing that Costco's representations

17  were false and misleading. Plaintiff and the Michigan Class Members did not, and could not,

18  unravel Costco's deception on their own.

19      245.   Costco's unfair or deceptive acts or practices were likely to and did in fact deceive

20  reasonable consumers, such as Plaintiff and the Michigan Class Members.

21      246.   Costco knew or should have known that its conduct violated the Michigan CPA.

22      247.   Costco's unfair and deceptive acts or practices occurred repeatedly in its trade or

23  business, were capable of misleading a substantial portion of the purchasing public.

24      248.   As a direct and proximate result of Defendant's violations of the Michigan CPA,

25  Plaintiff and the Michigan Class Members have suffered injury-in-fact and/or actual damage.

26      249.   Defendant intentionally and knowingly misrepresented material facts about

27  Kirkland Tequila Products with intent to mislead Plaintiff and the Michigan Class.

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

250.    Plaintiff and Michigan Class Members suffered ascertainable loss caused by Defendant's misrepresentations and its concealment of a failure to disclose material information.

251.    Plaintiff seeks injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

**TENTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Based On Michigan Law)**

252.    Plaintiff Leventhal incorporates and realleges the foregoing factual allegations by reference.

253.    Plaintiff brings this Count on behalf of himself and the Michigan Class.

254.    Costco intentionally concealed and suppressed material facts regarding its Kirkland Tequila Products.

255.    Costco's omissions, concealment, and/or misrepresentations alleged herein did cause Plaintiff and the other Michigan Class Members to make their Kirkland Tequila Product purchases.  Plaintiffs were unaware of these material facts, and had Costco communicated these material facts to consumers, Plaintiff and the other Michigan Class Members would not have purchased Kirland Tequila Products or would not have purchased Kirkland Tequila Products at the prices they paid. Accordingly, Plaintiffs and the other Michigan Class Members have suffered injury in fact, including lost money or property, as a result of Costco's misrepresentations and omissions.

**H.    Claims brought on behalf of the New Jersey Class.**

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. Stat. Ann. § 56:8-1, *et seq.*,)**

256.    Plaintiff Mathenge incorporates and realleges the foregoing factual allegations by reference.

257.    Plaintiff Mathenge brings this Count on behalf of himself and the New Jersey Class.

CLASS ACTION COMPLAINT - 44
CASE NO.: _____

258.    Plaintiff and New Jersey Class Members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-19.

259.    Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its Kirkland Tequila Products in violation of N.J. Stat. Ann. § 56:8-2.

260.    Defendant's deceptive acts and practices, which were intended to mislead consumers who purchased Kirkland Tequila Products, was conduct directed at consumers.

261.    Costco's omissions, concealment, and/or misrepresentations alleged herein did cause Plaintiff and the other New Jersey Class Members to make their Kirkland Tequila Product purchases.  Plaintiff and the other New Jersey Class Members were unaware of these material facts, and had Costco communicated these material facts to consumers, Plaintiff and the other New Jersey Class Members would not have purchased Kirland Tequila Products or would not have purchased Kirkland Tequila Products at the prices they paid. Accordingly, Plaintiff and the other New Jersey Class Members have suffered injury in fact, including lost money or property, as a result of Costco's misrepresentations and omissions.

**I.    Claims brought on behalf of the New Mexico Class.**

**TWELFTH CAUSE OF ACTION**
**VIOLATION OF THE NEW MEXICO UNFAIR**
**TRADE PRACTICES ACT**
**(N.M. Stat. Ann. §§ 57-12-1, *et seq*.)**

262.    Plaintiff Bailey incorporates and realleges the foregoing factual allegations by reference.

263.    Plaintiff Bailey brings this Count on behalf of the New Mexico Class.

264.    The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M.

CLASS ACTION COMPLAINT - 45
CASE NO.: _____



**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1    Stat. Ann. § 57-12-2(D). Defendant's acts and omissions described herein constitute unfair or

2    deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D).

3        265.    Defendant, Plaintiff, and the New Mexico Class Members are "persons" under the

4    New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

5        266.    Defendant's actions, as set forth above, occurred in the conduct of trade or

6    commerce as defined under N.M. Stat. Ann. § 57-12-2.

7        267.    Defendant's unfair or deceptive acts or practices were likely to and did in fact

8    deceive reasonable consumers, including Plaintiff and the other New Mexico Class Members,

9    about the true nature of Kirkland Tequila Products.

10        268.    Defendant intentionally and knowingly misrepresented material facts about

11    Kirkland Tequila Products with intent to mislead Plaintiff and the New Mexico Class.

12        269.    Plaintiff and the New Mexico Class Members reasonably relied on Costco's

13    material omissions and false misrepresentations. They had no way of knowing that Costco's

14    representations were false and misleading. Plaintiff and the New Mexico Class Members did not,

15    and could not, unravel Costco's deception on their own.

16        270.    Costco's unfair or deceptive acts or practices were likely to and did in fact deceive

17    reasonable consumers, such as Plaintiff and the New Mexico Class Members.

18        271.    Costco knew or should have known that its conduct violated the New Mexico

19    UTPA.

20        272.    Costco's unfair and deceptive acts or practices occurred repeatedly in its trade or

21    business, were capable of misleading a substantial portion of the purchasing public.

22        273.    As a direct and proximate result of Defendant's violations of the New Mexico

23    UTPA, Plaintiff and the New Mexico Class Members have suffered injury-in-fact and/or actual

24    damage.

25        274.    Plaintiff seeks recovery of actual damages or $100, whichever is greater,

26    discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well

27    as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

28

HAGENS BERMAN

275.     Plaintiff also seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, and any other just and proper relief available under the New Mexico UTPA.

**J.      Claims brought on behalf of the New York Class.**

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349-350**
**(N.Y. Gen. Bus. Law §§ 349-350)**

276.     Plaintiff Cohen incorporates and realleges the foregoing factual allegations by reference.

277.     Plaintiff Cohen brings this Count on behalf of himself and the New York Class.

278.     New York General Business Law ("New York GBL") makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

279.     Plaintiff and New York Class Members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

280.     Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

281.     Defendant's deceptive acts and practices, which were intended to mislead consumers who purchased Kirkland Tequila Products, was conduct directed at consumers.

282.     Because Defendant's willful and knowing conduct caused injury to Plaintiff, Plaintiff seeks recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive conduct; and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully requests that the Court:

A.      Certify the proposed Classes, appoint Plaintiffs as the class representatives, appoint Plaintiffs' Counsel as Class Counsel, and make such further orders for the protection of Class Members as the Court deems appropriate;

B.      Enjoin Costco from engaging in the unlawful conduct alleged herein, and order such

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1   other injunctive relief that the Court deems just and proper;

2         C.      Award damages to Plaintiffs and the Classes, including punitive damages, statutory

3   damages, costs, and disgorgement in an amount to be determined at trial, except that monetary

4   relief under the CLRA, as stated above, shall be limited prior to completion of the applicable notice

5   requirements;

6         D.      Award Plaintiffs and Class Members pre- and post-judgment interest as permitted

7   by law;

8         E.      Award Plaintiffs and Class Members reasonable litigation expenses and attorneys'

9   fees as permitted by law;

10        F.      Enter an order holding Costco financially responsible for all Class notice and the

11  administration of Class relief;

12        G.      Enter judgment in favor of Plaintiffs and Class Members; and

13        H.      Order such other or further relief as the Court may deem appropriate, just, and

14  equitable under the circumstances.

15                                                 **DEMAND FOR JURY TRIAL**

16        Plaintiffs demand a trial by jury of all issues triable as of right.

17

18  DATED this 14th day of November 2025     Respectfully submitted,

19                                             H**AGENS** B**ERMAN** S**OBOL** S**HAPIRO** LLP

20                                           By: */s/ Steve W. Berman*

21                                               Steve W. Berman (SBN 12536)

                                         By: */s/ Shelby Smith*

22                                               Shelby Smith (SBN 31377)

23                                           1301 Second Avenue, Suite 2000

                                         Seattle, WA 98101

24                                           Telephone: (206) 623-7292

                                         Facsimile:  (206) 623-0594

25                                           Email: steve@hbsslaw.com

26                                                   shelby@hbsslaw.com

27

28

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

Nathaniel A. Tarnor
594 Dean Street, Suite 24
Brooklyn, NY 11238
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
Email: nathant@hbsslaw.com

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Isaac Miller (SBN 266459)
imiller@baronbudd.com
**BARON & BUDD P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT - 49
CASE NO.: _____